Colin CLARK, Petitioner-Appellant,

v.

**LOUISIANA STATE PENITENTIARY and Attorney General, State of Louisiana, Respondents-Appellees.**

No. 81–3792.

United States Court of Appeals, Fifth Circuit.

Dec. 7, 1982.

Rehearing and Rehearing En Banc Denied Feb. 10, 1983.

Richard E. Shapiro, New Orleans, La., for petitioner-appellant.

Kay Kirkpatrick, John W. Sinquefield, Asst. Dist. Attys., Baton Rouge, La., for respondents-appellees.

Before INGRAHAM, REAVLEY and POLITZ, Circuit Judges.

REAVLEY, Circuit Judge:

Colin Clark was convicted of first degree murder and sentenced to death by a Louisiana court. The Supreme Court of Louisiana affirmed. *State v. Clark*, 387 So.2d 1124 (La.1980), *cert. denied* 449 U.S. 979, 101 S.Ct. 1530, 67 L.Ed.2d 825; rehearing denied 449 U.S. 1103, 101 S.Ct. 900, 66 L.Ed.2d 830 (1981). Post conviction relief was sought in the Louisiana courts, on grounds that included the ones argued here, without success. This § 2254 petition was then filed in the federal district court, which denied relief after several hearings and careful consideration. *Clark v. Louisiana State Penitentiary*, 520 F.Supp. 1046 (M.D.La.1981). We conclude that constitutional error requires reversal.

The evidence warranted a finding that Colin Clark and Michael Glover robbed the Red Lobster Inn in Baton Rouge, Louisiana, about 2 a.m. on July 15, 1978; and that during the course of the robbery Fred Schmidt, the assistant manager of the restaurant, was killed by a pistol shot to his head, accompanied by more than 30 knife wounds, two of which would have been fatal.

Appellant brings two constitutional complaints to this court. The complaint of ineffective assistance of counsel lacks merit and has been answered by the district court. 520 F.Supp. at 1049–1050, 1053–1059.

The other complaint is that the Fourteenth Amendment was violated by the jury instruction, in that the state was relieved of the burden of proving beyond a reasonable doubt, without aid of any imputation from a lesser crime or the act of another, an element of the crime: the specific intent to kill or inflict great bodily harm.

The jury was instructed as follows:

"Criminal conspiracy is defined in our code as the agreement or combination of two or more persons for the specific purpose of committing any crime. Providing that agreement or combination to commit a crime shall not amount to a criminal conspiracy unless in addition to such an agreement or combination one or more of such parties does an act in furtherance of the object of the agreement or combination. If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense. Each conspirator in a conspiracy is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby. Or whether the conspirator doing such an act or making such declaration be or be not on trial with his co-defendant."

Clark was charged with first degree murder: killing a human being while engaged in the perpetration or attempted perpetration of armed robbery. While there was ample evidence of a conspiracy between Clark and Glover to commit a crime, as the Louisiana Supreme Court held (387 So.2d at 1129–1130), that crime was armed robbery and not murder. Even if it could be said that the evidence warranted a finding of conspiracy to kill (and we cannot say so), the jury was not required to find that a conspiracy to kill existed or told that absent *that* conspiracy they could not attribute the murderous act of one conspirator to the other. The jurors could conclude that, because Clark and Glover conspired to rob the restaurant, any act of Glover during the robbery must be deemed intended by Clark—including not only those acts foreseeable and necessary to the robbery enterprise but also a wanton act of murder.

Under Louisiana law the specific intent to kill or do great bodily harm is an element of the crime with which Clark was charged.[1] Since *Enmund v. Florida*, —— U.S. ——, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) the Eighth Amendment does not permit imposition of the death penalty upon one who participates in a robbery but does not kill or

---

1. Since *Enmund v. Florida*, —— U.S. ——, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) the Eighth Amendment does not permit imposition of the death penalty upon one who participates in a robbery but does not kill or contemplate the taking of a life.

contemplate the taking of a life. The prosecution was thus required to prove that Clark intended to kill or do great harm to Fred Schmidt in order to warrant the conviction of first degree murder. Proof of an act of Glover did not necessarily become proof of an act, assented to or commended, by Clark. An instruction to the jury to deem Glover's acts to be intended by Clark relieved the prosecution of its burden in violation of *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and cast the burden of disproving that intent upon Clark, in violation of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

It is true that the trial judge instructed the jurors on several occasions that they could not find Clark guilty of first degree murder unless they found that he had specific intent to kill or inflict great bodily harm. Nevertheless, looking to the overall charge, the jury was told that they could find evidence of that intent in acts of butchery—by Glover—if the two of them had combined to commit the crime of armed robbery. Indeed, the jurors heard other expressions that may have buttressed that misunderstanding of the law. During jury selection, the prosecutor used a hypothetical case, of three persons taking different roles in a bank robbery, to explain the equal guilt of co-conspirators. Subsequently the defense attorney attempted to explain:

> If these three people did conspire to rob a bank and when the robber goes in he kills ... someone in there, ... if those other two people had not planned any murder to happen, they had not intended for a murder to happen, all they had intended was that the bank was going to be robbed and this other man, on his own, kills somebody in that establishment, can you accept the fact that those other two people are not guilty of specific intent first degree murder.

Whereupon, the prosecutor objected on the ground that it was not necessarily a correct statement of the law. The judge responded that the hypothetical had nothing to do with the case on trial and that he would instruct them in the law at the conclusion of the trial. He then added his often repeated definition of first degree murder, which included the specific intent to kill.

In his opening statement to the jury the prosecutor stated:

> Another law which will be applicable in this case is that all persons or parties concerned, or involved, in the commission of a crime whether they aid or abet or procure or counsel another to commit that crime are known as "principals". And the principal in our law is a person who is responsible for the criminal liability in the commission of a crime.

In his summation to the jury, the prosecutor stated:

> So criminal responsibility is broader than just the person who commits a crime. We gave you the hypothet about the people going to the bank. If they are involved and they are concerned, if they help in any way, if they counsel in any way, if they participate, that type of person is equally as guilty as the one who perhaps factually was more involved. That is known as the law of principals. Now, in connection with that law are two other laws; one is knows [sic] as the law of conspiracy. The law says when two or more people combine, get together, agree, if you will, plan or connive crminal [sic] activity and one—one of the parties does an act in furtherance of the object of the desire then at that point the law known as criminal conspiracy has been violated.... co-conspirators, in other words, people who have agreed to commit a crime and plan to commit it and one of them does an act in furtherance of it whereby criminal conspiracy is had, then the law says that each and every act of each and every coconspirator is deemed to have been assented to and commended by each and every coconspirator, whether he be present or not. And that's why the fellow who stays home when he had gone into the bank and drawed [sic] the design, he was responsible. These people—the fellow holding the gun at the bank teller was acting as his agent although he was

at home because the law says that, not because I say it, the law says it.[2]

While this is not an incorrect statement for some purposes, and while there is no suggestion here that the prosecutor intended to mislead the jurors, the risk of misapprehension of the conspiracy instruction was heightened by these words. At no time during the trial or in the court's instruction to the jury was it explained that a conspiracy alone to rob does not attach equal guilt and intent for all to a co-conspirator's act of murder. The jurors were never told that the statement by the defense attorney to the panel, which statement was disputed by the prosecutor and not ruled upon by the judge, was indeed correct.

This record reflects the efforts of court and counsel to try Colin Clark fairly and competently. The proof tended to show that Clark himself butchered the deceased: he had the personal grievance; he had carried a knife which resembled the weapon found beside the body; his hand was badly cut at the time. Before the Constitution will allow this conviction and sentence, however, we must know that the jury found beyond any reasonable doubt that Clark, personally, did have that mind to kill. The conspiracy instruction may not have been read by any juror as affecting the requirement that they find Colin Clark guilty of lethal purpose. On the other hand, the jurors may have accepted the literal meaning of the instruction we have stated above. The fact that a reasonable juror could have done so means that we must discount the possibility that the jurors actually did proceed as the trial court intended. *See Sandstrom v. Montana,* 442 U.S. at 519, 99 S.Ct. at 2456–2457. We are left with "a level of uncertainty and unreliability [in] the fact-finding process that cannot be tolerated in a capital case." *Beck v. Alabama,* 447 U.S. 625, 643, 100 S.Ct. 2382, 2393, 65 L.Ed.2d 392 (1980).

The judgment is REVERSED; the cause is REMANDED to the district court with directions to grant the writ subject to further proceedings in the state court to retry or resentence the petitioner.

**2.** In his closing argument the prosecutor said:
It is pointed out there was no blood inside the managerial area, that's true. And—Yeah, I have several theories but, I mean, I don't know why. I don't know whether it was wiped up or just wasn't any there or Glover went in there, who was obviously not cut, and he was the one that got the money while the other [sic] were doing something else, maybe working on the old man or something. I can't explain that, I—either way, under this case under the definition of principals or co-conspirators—uh—there is no significance and there is no moment who did what. The significant thing is what was done and were they together?