**Doyle Edward SKILLERN,
Petitioner-Appellant,**

v.

**W.J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.**

No. 82–2492.

United States Court of Appeals,
Fifth Circuit.

Dec. 5, 1983.

Rehearing and Rehearing En Banc Denied Jan. 5, 1984.

Shannon E. Salyer, Corpus Christi, Tex. (court-appointed), for petitioner-appellant.

Leslie A. Benitez, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN, TATE and JOLLY, Circuit Judges.

TATE, Circuit Judge:

The petitioner Skillern, a Texas state prisoner sentenced to death, appeals from the denial without an evidentiary hearing of his application for federal habeas relief. 28 U.S.C. § 2254. Skillern and a codefendant Sanne were convicted of murdering Patrick Randel, a state narcotics agent. The victim Randel and the codefendant Sanne had been sitting in Randel's car at a roadside park when the petitioner Skillern drove up, immediately following which the codefendant Sanne shot and killed Randel. In arguing for reversal on his appeal, the petitioner raises three groups of contentions:

I.  that his death penalty was unconstitutionally imposed under *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), in the absence of sufficient evidence of his own personal culpability for the allegedly unexpected act of the codefendant triggerman in shooting the victim, and under instructions that allegedly permitted the jury to impute to Skillern the triggerman's intent to kill the victim;

II. that the district court improperly denied him an evidentiary hearing on his allegations that he was denied due process and the effective assistance of counsel because the denial of a continuance forced a newly-appointed defense counsel to go to trial on the capital charge three weeks after his appointment; and

III. that evidentiary error of constitutional magnitude rendered the sentencing hearing fundamentally unfair and violative of due process, because of the admittedly erroneous admission into evidence of the allegedly expert opinion of a forensic pathologist that there was a probability that Skillern would commit future criminal acts of violence and would constitute a continuing threat to society; and that the sentencing hearing was similarly infected by the admission into evidence of an indictment for murder *with malice* in an earlier offense, when Skillern had then been convicted of the lesser offense of murder *without* malice.

Although these contentions are not insubstantial, we find no error under the circumstances shown by the denial of the petitioner's § 2254 application without an evidentiary hearing.

*Factual context*

The victim Randel, a state narcotics agent, had been working undercover to set up a purchase of illegal drugs from Skillern and his codefendant Sanne. The day before the killing Skillern and Sanne had become concerned that Randel might be a state informant. Nevertheless, the three had met in Randel's motel room, where other narcotics agents eavesdropped on the conversation from an adjoining room.

Sanne and Skillern showed the officer a sample of the drugs they intended to sell. The officer then asked them how they wanted to handle the deal, and one of the defendants replied, "Let's go some place where we can talk business." Leaving the State money that was to be used for the transaction in the motel room, Randel drove off in his car with Sanne as passenger, while Skillern followed in another automobile. Approximately an hour later, Skillern and Sanne returned, and Sanne was seen entering Randel's motel room. They then drove off.

A few hours later Randel was found shot to death in his locked car at a roadside park

twenty to twenty-five miles distant from the motel. About four hours later, Skillern and Sanne were arrested. Skillern had the State purchase money and Randel's gun in his possession, while Sanne was in possession of Randel's credit cards and other effects.

Skillern and Sanne were indicted for intentionally causing the death of Randel in the course of committing and attempting to commit a robbery, a capital offense. Tex. Penal Code Ann. § 19.03 (Vernon 1974). At an initial trial, at which neither testified, Skillern and Sanne were found guilty; in the sentencing hearing, the jury assessed a life sentence for Sanne (who had a minor criminal record) and a death sentence for the petitioner Skillern (whose criminal record included a prior killing). On direct appeal, the convictions were reversed because of a failure to sequester the jury. *Skillern v. State,* 559 S.W.2d 828 (Tex.Cr. App.1977).

The present conviction results from a retrial, at which Sanne now took the stand and confessed to firing the gun that killed Randel. According to Sanne, Randel struck him on the face and unexpectedly pulled a gun on him, following which Sanne shot him six times in the chest and abdomen. (Under this version of the crime, Skillern points out, his own personal participation was at most limited to a planned robbery and did not encompass the unexpected killing of Randel by Sanne.) On this second trial, the jury again found both defendants guilty, and in the sentencing phase the death penalty was assessed against both defendants. The convictions and Skillern's death sentence were affirmed on direct appeal, but Sanne's death sentence was reformed to life imprisonment on the basis of double jeopardy. *Sanne v. State,* 609 S.W.2d 762 (Tex.Cr.App.1980), *cert. denied, Skillern v. Texas,* 452 U.S. 931, 101 S.Ct. 3067, 69 L.Ed.2d 432 (1981). Exhausting state habeas proceedings, Skillern now applies for federal habeas relief. 28 U.S.C. § 2254.

As previously noted, the petitioner Skillern contends that the district court erred in denying him federal habeas relief, relying upon three principal groups of contentions, which respectively concern: I. The *Enmund* issues; II. The denial of an evidentiary hearing on his contentions that he was denied the effective assistance of counsel; and III. Erroneous evidentiary rulings of constitutional magnitude in the sentencing hearing.

### I. *The* Enmund *Issues*

In *Enmund v. Florida,* 458 U.S. 782, 797, 102 S.Ct. 3368, 3376–77, 73 L.Ed.2d 1140 (1982), the United States Supreme Court held that the Eighth Amendment does not permit "imposition of death penalty on one such as Enmund who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." Enmund had been sentenced to die for a murder that occurred during the course of a robbery in which he was the getaway car driver. In holding the death penalty constitutionally excessive for Enmund's criminal conduct, the Court observed that "[t]he focus must be on *his* culpability, not on that of those who committed the robbery and shot the victims," 458 U.S. at 798, 102 S.Ct. at 3377 (emphasis added by the Court), and it concluded that Enmund's death penalty was invalid "in the absence of proof that Enmund killed or attempted to kill" or "intended or contemplated that life would be taken," 458 U.S. at 801, 102 S.Ct. at 3379.

In *Bell v. Watkins,* 692 F.2d 999, 1012 (5th Cir.1982), we summarized *Enmund* as holding "that under the eighth amendment a death sentence may not be imposed on someone who neither committed the homicide, attempted to commit the homicide, nor participated in the plot to kill the victim." Similarly, in *Clark v. Louisiana State Penitentiary,* 694 F.2d 75, 76–77 (1982), *reh. denied,* 697 F.2d 699 (5th Cir.1983), we interpreted *Enmund* as holding that "the Eighth Amendment does not permit imposition of the death penalty upon one who participates in a robbery but does not kill or contemplate the taking of a life." In the

latter case, although not on *Enmund* grounds (see note 6, *infra*), we vacated a death sentence because of instructions that unconstitutionally permitted conviction of first-degree murder on the basis of a coconspirator robber's killing, even absent specific intent to kill by the defendant sentenced to death.

Based upon the principles enunciated and applied in these decisions, the petitioner Skillern raises two principal contentions: *A.* that the evidence was insufficient to subject him to the death penalty because it does not show that he personally had taken life, attempted to take life, or intended to take life; and *B.* that, in any event, the instructions on which the case was submitted to the jury permitted it to assess the death penalty against him on the basis of his confederate Sanne's intentional killing of the victim and absent any requirement that the jury find Skillern himself had killed or had personally contemplated that Sanne would murder the victim.

## A. *Sufficiency of the evidence*

Skillern points out that the uncontradicted testimony of Sanne, his codefendant and his accomplice in the prospective drug transaction, is to the effect that Sanne himself had not planned to kill the narcotics officer before the two had driven in the agent's vehicle to the roadside park, and that the killing of the agent had resulted, without prior premeditation by Sanne, when the agent had unexpectedly drawn a pistol on Sanne and had struck him. The jury was not, of course, required to believe Sanne's account of the incident.

■ Assuming the jury was properly instructed, we find that a rational jury could find beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution, *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S.Ct. 2781, 2793, 61 L.Ed.2d 560 (1979), that Skillern had agreed in advance with Sanne not only to rob Randel, but also to kill Randel, the suspected police informant, after they would lure him away from his motel room to the roadside park. Prior to the meeting with Randel in the latter's motel room to set up the drug transaction, the triggerman Sanne testified that he had told his supplier in Mexico to put the transaction on "hold". When Randel's body was found, it was in a position indicating that he was totally unaware of the imminence of danger; a cigarette was still dangling from his right hand. Considering the distance from the motel to the roadside park and back, the jury could reasonably have found that Randel was killed immediately upon the arrival of the two vehicles at the roadside park (as indeed Sanne so testified), according to previous plan, and that immediately the accomplices returned to the motel room within an hour of their leaving to retrieve the State purchase money.

## B. *The jury instructions*

Skillern was indicted and convicted for capital murder, as having intentionally caused the death of the victim Randel in the course of committing and attempting to commit a robbery. Tex.Penal Code Ann. § 19.03(a)(2) (Vernon 1974).[1] Capital mur-

1. Tex.Penal Code Ann. § 19.03 (Vernon 1974) provides with regard to "Capital Murder":

    (a) A person commits an offense if he commits murder as defined under Section 19.-02(a)(1) of this code and:

    (1) the person murders a peace officer or fireman who is acting in the lawful discharge of an official duty and who the person knows is a peace officer or fireman;

    (2) the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated rape, or arson;

    (3) the person commits the murder for remuneration or the promise of remuneration or employs another to commit the murder for remuneration or the promise of remuneration;

    (4) the person commits the murder while escaping or attempting to escape from a penal institution; or

    (5) the person, while incarcerated in a penal institution, murders another who is employed in the operation of the penal institution.

    (b) An offense under this section is a capital felony.

    (c) If the jury does not find beyond a reasonable doubt that the defendant is guilty of an offense under this section, he may be

der is defined as a "capital felony", *Id.* § 19.03(b); a capital felony is punishable either by confinement for life or by death. Tex.Penal Code Ann. § 12.31(a) (Vernon 1974).[2]

■ When an accused is convicted of a capital offense (which, to reiterate, under Texas law is punishable either by death or by life imprisonment), Tex.Code Crim.Proc. Ann. art. 37.071 (Vernon 1974) provides for a separate sentencing hearing before the

trial jury, which is required to make certain findings in response to special issues submitted to it before the trial judge may sentence the defendant to death.[3]

We have excerpted and set forth in Appendix 1, attached to this opinion, the charges of the state trial judge at the guilt and innocence phase of the state trial that are pertinent to the issues before us. Although the charge emphasized that capital murder requires that the accused "*inten-*

---

convicted of murder or of any other lesser included offense.

Tex.Penal Code Ann. § 19.02 (Vernon 1974) provides with regard to the crime of "Murder":

(a) A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3) commits or attempts to commit a felony, other than voluntary or involuntary manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

(b) An offense under this section is a felony of the first degree.

2. Tex.Penal Code Ann. § 12.31 (Vernon 1974) provides:

(a) An individual adjudged guilty of a capital felony shall be punished by confinement in the Texas Department of Corrections for life or by death.

(b) Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony. A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact.

3. Tex.Code Crim.Proc.Ann. art. 37.071 (Vernon 1974) provides:

(a) Upon a finding that the defendant is guilty of a capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to death or life imprisonment. The proceeding shall be conducted in the trial court before the trial jury as soon as practicable. In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence. This subsection shall not be construed to authorize the introduction of any evidence secured in violation

of the Constitution of the United States or of the State of Texas. The state and the defendant or his counsel shall be permitted to present argument for or against sentence of death.

(b) On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

(c) The state must prove each issue submitted beyond a reasonable doubt, and the jury shall return a special verdict of "yes" or "no" on each issue submitted.

(d) The court shall charge the jury that:

(1) it may not answer any issue "yes" unless it agrees unanimously; and

(2) it may not answer any issue "no" unless 10 or more jurors agree.

(e) If the jury returns an affirmative finding on each issue submitted under this article, the court shall sentence the defendant to death. If the jury returns a negative finding on any issue submitted under this article, the court shall sentence the defendant to confinement in the Texas Department of Corrections for life.

(f) The judgment of conviction and sentence of death shall be subject to automatic review by the Court of Criminal Appeals within 60 days after certification by the sentencing court of the entire record unless time is extended an additional period not to exceed 30 days by the Court of Criminal Appeals for good cause shown. Such review by the Court of Criminal Appeals shall have priority over all other cases, and shall be heard in accordance with rules promulgated by the Court of Criminal Appeals.

*tionally* kills or causes the death of another" while in the course of robbing another, paragraphs 6 and 7 of the charge permitted the jury to find Skillern guilty of the triggerman Sanne's killing, under the Texas law of criminal responsibility, as a conspirator in a robbery attempt equally guilty of the murder by his coconspirator if the killing "was committed in furtherance of the unlawful purpose [of the robbery] and was one that should have been *anticipated* as a result of the carrying out of the conspiracy." (Emphasis added.)

Skillern argues that this charge, in violation of *Enmund,* permitted the jury to find Skillern guilty of capital murder, even though he did not personally contemplate or intend Sanne's allegedly unexpected shooting the victim. This argument overlooks, however, that *Enmund* only prohibits, as a violation of the Eighth Amendment, the *execution* of a person for the uncontemplated (*i.e.,* personally by him) act of an accomplice in the course of committing a non-capital felony upon which both were engaged. Nothing in *Enmund* or any other decision cited to us implicates any violation of rights guaranteed by the federal constitution by a

state rule (such as that provided by Tex.Penal Code Ann. §§ 7.01, 7.02 (Vernon 1974)[4]), by which the *guilt* of an accused for an offense committed by a confederate may nevertheless be established—even though the accused himself may not personally have intended the particular criminal act committed—by his criminal responsibility for the act or conduct of a confederate when engaged in a joint criminal endeavor. *Enmund* merely invalidates a death penalty when based solely upon a defendant's criminal responsibility for a killing by an accomplice that is unintended or not contemplated by the defendant; it does not invalidate a conviction of a substantive offense of murder when guilt is so based.

■ Under Texas law, an accused may be convicted of the substantive offense of capital murder—which, to reiterate, is punishable *either* by life imprisonment *or* by death, see notes 1 and 2, *supra*—under the Texas law of parties and of criminal responsibility for the act of a confederate, even though the killing that occurred in the course of another offense was not intended by the defendant before the court.[5] In denying

4. Tex.Penal Code Ann. § 7.01 provides:

(a) A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

(b) Each party to an offense may be charged with commission of the offense.

(c) All traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice.

Tex.Penal Code Ann. § 7.02 provides:

(a) A person is criminally responsible for an offense committed by the conduct of another if:

(1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

(3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails

to make a reasonable effort to prevent commission of the offense.

(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

5. Under the Texas law of principals, a defendant may be convicted of the substantive offense of capital murder although his codefendant killed the decedent during a robbery committed by the two. *Smith v. State,* 540 S.W.2d 693, 696 (Tex.Cr.App.1976). *See also Wilder v. State,* 583 S.W.2d 349, 356–57 (Tex.Cr.App. 1979), holding that an accomplice (the wheelman) in a robbery may be convicted, although he did not actually kill the deceased, on the basis of Tex.Penal Code Ann. §§ 7.01, 7.02 (Vernon 1974), quoted in note 4 *supra;* under these provisions, a person is criminally responsible for a killing committed by a confederate in an attempt to carry out a conspiracy to commit a robbery, even though the accused himself might be without personal intent that a killing

rehearing in *Clark v. Louisiana State Penitentiary,* 694 F.2d 75 (5th Cir.1982), we noted that the Fourteenth Amendment does not forbid "a state from defining criminal culpability so as to allow an assumed or deemed assent to the act of a coconspirator in a different crime. There is no bar in the Fourteenth Amendment against the crime of felony murder." 697 F.2d 699, 700 (1983) (on petition for rehearing).[6]

■ Thus, neither *Enmund* nor any cited constitutional principle bars Skillern's conviction under Texas law of the substantive offense of capital murder, which is not necessarily punishable by a sentence of death, simply because his guilt of the substantive offense was established by the Texas law of criminal responsibility for the acts of his confederate Sanne—whether or not Skillern himself intended or contemplated that a life would be taken in the commission of the robbery upon which Skillern and the confederate were jointly engaged. *Enmund* might well bar a *death penalty* upon jury instructions that permitted its imposition based solely upon a coconspirator's intent and act, and absent personal intent or contemplation of the accused that a killing take place. However, the present instructions of which complaint is made did not purport to determine the sentencing option of the jury as whether life imprisonment or instead death would be imposed. Their sole purport was to furnish a basis upon which the jury could determine Skillern's guilt of the substantive offense of capital murder, only following which (see note 3 *supra*)—and under different instructions—would the jury determine the criteria by which a death sentence, instead of life imprisonment, would be the penalty for conviction of the substantive offense of capital murder.

■ We therefore do not find merit to Skillern's contention that the jury instructions complained of permitted imposition of a capital sentence in violation of the principles enunciated by *Enmund.*

In the present state case, following the conviction, a sentencing hearing was held at which evidence was submitted; after which, the jury was asked to decide three special issues, its answers to which would determine whether the court would sentence Skillern to death or instead to life imprisonment. See note 3 *supra.* The district court then gave brief general instructions, to which no objection was made, that did not include any reference to the Texas law of criminal responsibility, and that required the jury to find proved beyond a reasonable doubt its answer to the three special issues submitted to it, as required by Tex.Code Crim.Proc.Ann. art. 37.071 (Vernon 1981) (quoted in note 3 *supra*). A unanimous jury answered Special Issue No. 1 in the affirmative:

> Was the conduct of the Defendant, Doyle Edward Skillern that caused the death of

---

might result from the attempt to commit the robbery.

For instance, in *Molandes v. State,* 571 S.W.2d 3 (Tex.Cr.App.1978), where the sentence was life imprisonment, the Texas appellate court affirmed the defendant's conviction of the substantive offense of capital murder under the Texas law of criminal responsibility for the conduct of another.

**6.** In *Clark,* we set aside a Louisiana conviction of first degree murder because of instructions that permitted the jury to find the defendant guilty of the crime, which required specific intent under Louisiana law, on the basis of his equal guilt for all acts committed by a coconspirator in the course of a robbery. We did so, however, not because of an *Enmund* Eighth Amendment violation, but because the defendant was denied constitutional due process by

instructions that lessened the prosecutor's burden to prove guilt of the substantive offense (under state law) beyond a reasonable doubt. As we noted in denying rehearing, 697 F.2d at 700:

> When ... the state law defines the crime to include a state of mind actively desiring that death or great bodily harm occur to another, the trial court may not lighten the state's burden, or dispense with that essential element of the crime, by converting the crime into felony murder.

Distinguishably from *Clark,* in the present situation Texas law (unlike Louisiana's) permits a finding of substantive guilt of the murder offense on the basis of the conduct of an accomplice who does the actual killing, see note 5 *supra,* so no due process rights are claimed to be implicated by the conviction itself of the substantive offense.

the deceased, Patrick Allen Randel, committed deliberately and with the reasonable expectation that the death of the deceased or another would result? [7]

█ The instructions at the sentencing hearing on their face thus required the jury to find beyond a reasonable doubt that Skillern's conduct that caused the victim's death was committed deliberately and with the reasonable expectation that the victim's death would result. It might have been preferable that an additional instruction have been given that the Texas law of a party's criminal responsibility for the act of another did not supply the accused's deliberate intent and reasonable expectation that death would result, a prerequisite for imposition of the death penalty. However, no request was made for a special instruction to this effect, nor was any objection made to the charge as given. We cannot say that the sentencing instructions themselves permitted the jury to find that the requisite deliberate intent or contemplation to kill could be based solely upon the accomplice Sanne's killing of the victim, in violation of Enmund.[8]

Nor can we say that the possible ambiguity in that regard of the jury instructions resulted in a level of uncertainty and unreliability in the fact-finding process, as enhanced by misleading prosecution argument at the sentencing hearing,[9] such as resulted in the vacation of the death sentence in Clark v. Louisiana State Penitentiary, 694 F.2d 75 (5th Cir.1982). In the state's brief opening argument, the prosecutor summarized the state's theory of the case with regard to Special Issue No. 1. Referring to the previous verdict of guilty, he succinctly stated, "You found that they, acting together, intended to kill him. What could be more deliberate and what could bring a more reasonably expected result?" [10]

In his argument, Skillern's counsel clearly delineated the different issue before the jury in the sentencing phase as to Skillern's criminal responsibility for the act of Sanne:

Obviously, I don't think that you will bind Mr. Skillern with what went on in Mr. Sanne's mind at the time of the shooting. I think the law tells you, and I am sure Mr. Butts will tell you again, that when "parties" were defined to you and you find that one was criminally responsible for the conduct of another, that is necessarily the framework in which you found Mr. Skillern guilty in this case.

That may be true but, when we get to the issue of punishment, why, it seems to me that so far as meting out what the punishment should be in a case like this, that you have got to assume, in your own minds, what may have been anticipated

---

7. The state trial court's sentencing instructions are found at pp. 263–65, and the three special issues submitted at pp. 266–67, of the State Record filed in evidence in this court, being the record filed with the Texas Court of Criminal Appeals on November 16, 1979.

Filed with the State Record is a 16-volume "Statement of Facts", which with index (Vol. 1) includes evidence and arguments on pretrial matters (Vol. 2) and the entire trial proceedings, including voir dire, arguments of counsel, and all evidence taken at the guilt trial and the sentencing hearing. Volume 14 includes the entire transcript of the post-conviction sentencing phase of the trial; it will be referred to as S.F., Vol. 14, in subsequent footnotes.

8. We must note, however, that in affirming Skillern's death sentence, the Texas Court of Criminal Appeals cursorily rejected the contentions Skillern now raises (founded on the guilt instructions, set forth in Appendix 1 to this opinion), by stating "It is well established that

the law of parties applies to these punishment issues in a capital murder case. Smith v. State, Tex.Crim.App. 540 S.W.2d 693." Sanne v. State, 609 S.W.2d 762, 765 (Tex.Cr.App.1980). We are not here faced with the issue of whether, in the light of Enmund, this application of the Texas law of criminal responsibility is still constitutionally permissible for imposition of a death penalty. In the case now before us, the sentencing instructions as given did not invoke Skillern's personal criminal responsibility for the acts of his accomplice.

9. The argument of counsel at the sentencing phase is set forth at pp. 2859–97, S.F., Vol. 14, cited in note 7. The opening arguments by the state are set forth at pp. 2859–66 and the closing arguments at pp. 2889–97. Defense counsel's arguments are at pp. 2866–77 (Skillern) and pp. 2877–88 (Sanne).

10. Id. at 2864.

by Mr. Skillern with respect to what another would do under circumstances that possibly no one could foresee, at that roadside park.[11]

In the fourth paragraph of his closing argument, it is true, the prosecutor (without objection by the defense) stated that the defendants "were acting together as a party within the meaning of the word 'party', as defined in paragraph six of the first charge," also noting "that charge is just as much the law of the land at this phase of the trial." [12] Nevertheless, the thrust of his argument was that everything Skillern and Sanne had "done" had been done in concert —"practically everything you have heard has been done in concert, in one way or another. Maybe one was playing the drum and the other blowing the bugle, but in concert." *Id.* at 2890–91. The prosecutor made no further reference to the law of parties in his nine-page closing argument. In asking for the jury's affirmative answer to Special Issue No. 1, the prosecutor quoted that the jury must find that the conduct of Skillern that caused the death was "committed deliberately in reasonable expectation that the death of the deceased would result," [13] without again referring to Skillern's criminal responsibility as a party for Sanne's act.

■ Reviewing the sentencing hearing arguments as a whole, in the light of the sentencing instructions given by the state trial court, we think that with regard to Skillern the issue pinpointed to the jury for its determination was whether Skillern himself deliberately participated in conduct that contemplated the murder by his accomplice Sanne of the victim. We are unable to say that the fleeting reference by the prosecution to the Texas law of party responsibility casts sufficient uncertainty or unreliability onto the jury's determination that Skillern was personally culpable in the victim's death as to require vacation of the death sentence.

## II.   *Effective Assistance of Counsel*

Skillern next urges that he was denied the effective assistance of counsel or other constitutional right through the denial of a continuance to allow his counsel more time to prepare for his defense. Skillern contends that, at the least, he is entitled to an evidentiary hearing to prove the prejudice he suffered in that regard.

With regard to the contention that an evidentiary hearing is required, counsel overlooks that in fact an evidentiary hearing was held in the state court on the pretrial motion for continuance, at which the state trial court rejected the contentions that more time was needed. Further, on the motion for a new trial the contention was made that the denial of the motions for pretrial continuance had prejudiced counsel in their preparation of the defense; at the hearing on this motion the defense counsel attempted to explain why the continuance had prejudiced their preparation of the defense; and these contentions were likewise rejected by the state trial court by its denial of the motion for a new trial.[14]

Thus, if the facts developed at these State hearings are sufficient to establish

11.  *Id.* at 2868. Later, Skillern's counsel reiterated the same argument of Skillern's personal lack of deliberate participation in the murder committed by Sanne. *Id.* at 2872–73.

12.  *Id.* at 2890.

13.  *Id.* at 2893.

14.  The following relevant pleadings, evidence, and statements of counsel are found in the State Record (S.R.), cited at note 7 *supra,* as follows: Skillern's pretrial motion for continuance, S.R. pp. 83–87; Skillern's related motion for appointment of additional counsel, S.R. pp. 96–97; Skillern's amended motion for new trial, S.R. pp. 288–305 (allegation 5 at p. 288,

urges error in the overruling of the motion for continuance); testimony by attorneys for Skillern and Sanne as to the reasons a continuance was in their view necessary, S.R., Statement of Facts, Vol. 2, pp. 27–44, followed by argument, *id.* at pp. 45–47; re-urged motion for continuance following selection of the jury and reasons therefor advanced by counsel, S.R. Statement of Facts, Vol. 8, pp. 610–13; claims of delays of inadequate time for trial preparation by attorneys for Skillern and Sanne in the hearing on the motion for new trial, S.R. Statement of Facts, Vol. 15, pp. 2911–14, 2918–2925, 2936, 2939.

the factual reasons concerning whether a continuance was or was not required to assure adequate time to serve as effective counsel, no further evidentiary hearing is required. See 28 U.S.C. § 2254(d).

Preliminarily, we must also note that the issue before us is not whether the state trial court abused its discretion in denying a continuance. "When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Hicks v. Wainwright,* 633 F.2d 1146, 1148 (5th Cir.1981). The denial of a continuance to afford appointed counsel a reasonable opportunity to confer with the accused and to prepare his defense may indeed amount to a deprivation of constitutional right, *Avery v. Alabama,* 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940), but whether in fact this has occurred requires an examination of the circumstances of the case, *id.* 308 U.S. at 450, 60 S.Ct. at 324 (denial of continuance to counsel appointed three days prior to trial in murder case did not under circumstances there present, offend the federal constitution). See also *Gandy v. Alabama,* 569 F.2d 1318 (5th Cir.1978) (where denial of right to counsel found in the denial of a continuance sought because of abrupt loss of representation by retained counsel). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, *particularly in the reasons presented to the trial judge at the time the request is denied." Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964) (emphasis added).

The appointment of counsel and the denial of continuance occurred in the following factual context:

Skillern's previous conviction and death penalty for the same crime had been reversed by the Texas Court of Criminal Appeals, following which on February 11, 1978, the state trial judge ordered a change of venue to another county and set the retrial for March 13, 1978. On February 20, twenty-two days before the trial date, attorney Connery was appointed to represent Skillern in his trial for capital murder, although he had been apprised of his upcoming appointment some five days prior thereto. Between February 20 and March 2, Connery filed fifteen pretrial motions (admittedly based mostly on those filed in the previous proceedings). One of these was a motion for a continuance, which was denied after an evidentiary hearing on March 8. Jury selection commenced on March 13, and the trial in chief commenced on March 21 and proceeded daily thereafter. On March 30, Skillern and his codefendant were found guilty of capital murder. On March 31, following a sentencing hearing held that day, these defendants were sentenced to death.

The chief ground urged by Skillern's pretrial motion for continuance was the inadequate time allowed to examine the nine-volume record of the previous trial, which had been made available to the defense counsel, and to interview the witnesses (who were out-of-county) before they testified. At the hearing, defense counsel estimated that a minimum delay of 2–3 weeks was necessary. In denying a re-urged motion for the continuance, the trial judge allowed defense counsel time to interview state witnesses, if requested, before they testified. The record further indicates that the prosecution made available to the defense counsel reports and other documents for the latter's use in cross-examination. All of the witnesses except one (who was interviewed by defense counsel before he took the stand) had testified in the prior trial. The experienced trial counsel from the previous trial and appeal, which had resulted in a reversal, indicated his willingness to give present defense counsel the benefit of his views, although some difficulty was experienced in securing them because of his other trial commitments.

At the hearing on the motion for the new trial, the defense counsel asserted as chief prejudice for the denial of the delay an

inability to secure an investigator to go into the background of the defendants a little more for the punishment phase of the trial (mentioning with regard to Skillern the opportunity to find out more detail about his prior conviction for killing his brother), and the securing of more evidence with regard to the nature of the undercover narcotics business, as well as to explore further details concerning the victim Randel as reflected by his personnel record that the prosecutor had furnished to the defendants for use at the second trial.

We are unable on the showing made, or for the reasons proffered to the state trial judge before and after the trial, to hold that the denial of a continuance was arbitrary or that Skillern has borne his burden of demonstrating that he was thereby deprived of his constitutional right to a fair trial because of the ineffective assistance of counsel. *Martin v. Maggio,* 711 F.2d 1273, 1279, 1281 (5th Cir.1981) (citing other decisions of this circuit). The constitutional right to the effective assistance of counsel guarantees the defendant, not error-free representation, but " 'counsel reasonably likely to render and rendering effective assistance' ". *Id.* While the seriousness of the charges must be considered as part of the totality of circumstances when ruling on a claim of ineffective assistance of counsel, the standard of competence required of trial counsel is no higher in capital cases than in non-capital cases. *Id.* 711 F.2d at 1279–80.

In our view, the state record shows no disadvantage to Skillern's defense by the allegedly inadequate preparation time. Although the issue is not entirely free from doubt (see the dissenting opinion in the Texas Court of Criminal Appeals, *Sanne v. State, supra,* 609 S.W.2d at 777, 779), we are unable to say that the denial of the continuance caused any actual prejudice to the appointed counsels' effective representation of the accused at the trial three weeks later—considering the appointed attorneys' access to the record of the previous state trial, the full discovery afforded by the prosecution, and the substantial identity of the issues and witnesses of the first and second trials. As is illustrated by the suggestion of defense counsel at the hearing on the motion for a new trial of what they might have done further had they been afforded the additional 2–3 weeks continuance requested, the original reasons sought for the continuance were largely obviated by the measures taken by the district court and by the appointed trial counsels' own energetic efforts to familiarize themselves with the evidence and the issues to prepare the defense of the accused. Outside of the conclusory allegation that more time was needed by appointed state trial counsel to prepare adequately for trial on this habeas review, no reason is suggested to us as to what trial counsel might have done differently or more effectively had more time been afforded. The most serious defect in Skillern's habeas argument that the relatively short period afforded his counsel rendered his trial constitutionally inadequate, is that the state trial record in fact reflects a competent defense, while Skillern is unable to point out any failing of his counsel or to suggest evidence that should have been uncovered in his favor through more adequate representation. *Martin v. Maggio, supra,* 711 F.2d at 1280–81 (citing other Fifth Circuit decisions).

We therefore conclude that Skillern is not entitled to federal habeas relief on grounds related to the state trial court's denial of a continuance to his attorney or of the attorney's allegedly ineffective assistance at the trial, on the basis of: the state record and the reasons there suggested by counsel for the need for an additional 2–3 weeks to prepare the defense; the state trial court's reasons for rejection of the continuance and its remedial measures to facilitate appointed counsel's efficient preparation of the defense; the in-fact effective representation of Skillern at his state trial; and the lack on federal habeas review of any specific allegations as to what more could have been done in Skillern's defense.

### III. *Evidentiary Rulings in the Sentencing Hearing*

Skillern's final substantial contention is that his fundamental right to a fair trial at

the sentencing hearing was violated by the admission, over his counsel's objection, of the incompetent expert opinion of a forensic pathologist, based upon a hypothetical question, that there was a probability that Skillern "would commit criminal acts of violence that would constitute a continuing threat to society."

On direct appeal, the Texas Court of Criminal Appeals found that although the admission of the doctor's answer was error because he was incompetent to testify as an expert and lacked firsthand familiarity with Skillern's personality to testify as a lay witness, it was harmless error due to the other evidence of Skillern's violent propensities adduced by the prosecution. *Sanne v. State, supra,* 609 S.W.2d at 773–74. The defendant's attorney extensively cross-examined the doctor and established in the presence of the jury that the doctor was not formally licensed to practice psychiatry and that his opinion as to future behavior was strictly based upon a hypothetical situation. The state appellate court concluded that the incremental effect of the doctor's opinion was not great enough to have had a persuasive effect on the mind of the average juror. *Id.* 609 S.W.2d at 774. The dissenting opinion in that court does set forth, however, strong reasons why the doctor's testimony was prejudicial to Skillern's defense against receiving a capital sentence. *Id.* 609 S.W.2d at 777, 778–79.

■ The role of a federal habeas court is more limited than that of the state appellate court. We do not sit as a super state supreme court to review error under state law. *Porter v. Estelle,* 709 F.2d 944, 957 (5th Cir.1983); *Mendiola v. Estelle,* 635 F.2d 487, 491 (5th Cir.1981), quoting *Cronnon v. Alabama,* 587 F.2d 246, 251 (5th Cir.), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979). An evidentiary error in a state trial does not justify federal habeas corpus relief unless it is of such magnitude as to constitute a denial of fundamental

fairness under the due process clause. *Porter, supra,* 709 F.2d at 957, and decisions there cited. Thus, even the erroneous admission of prejudicial testimony does not justify habeas relief unless it is "material in the sense of a crucial, critical, highly significant factor." *Porter, supra,* 709 F.2d at 957; *Anderson v. Maggio,* 555 F.2d 447, 451 (5th Cir.1977); *Hills v. Henderson,* 529 F.2d 397, 401 (5th Cir.), *cert. denied sub nom., Hills v. Maggio,* 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976); *Corpus v. Beto,* 469 F.2d 953, 956 (5th Cir.1972), *cert. denied,* 414 U.S. 932, 94 S.Ct. 236, 38 L.Ed.2d 162 (1973).

■ We are unable to say that the erroneous admission of the doctor's opinion, even conceding with the state appellate dissent that it may have caused some prejudice,[15] caused prejudice of constitutional magnitude as tested by these standards.

■ Similarly so tested, the admission of the indictment of Skillern for the murder *with* malice of his brother, proper under state law, *Sanne v. State, supra,* 609 S.W.2d at 773, possesses no merit as a basis for federal habeas relief. In any event, the defendant could not have been harmed by the introduction of the indictment, as the jury immediately was informed that Skillern was convicted of murder without malice. The authenticating witness, a practicing attorney and former prosecutor, explained to the jury during cross-examination by the defendant's counsel, the legal difference between murder with malice and murder without malice.

*Conclusion*

Finding no merit to the petitioner Skillern's contentions, we AFFIRM the judgment of the district court dismissing without an evidentiary hearing his petition for federal habeas relief.

AFFIRMED.

*Appendix*

The state trial judge's charge is found at pp. 237–59 in the State Record (which was intro-

15. With regard to prejudicial impact on the jury, however, we note that Skillern received a death sentence on the first trial on the basis of the jury's affirmative finding as to his violent propensity, founded on evidence as to his crim-inal record and propensities, even though Dr. Rupp did not at the first-trial's sentencing hearing give his inadmissible "expert" or lay opinion.

duced in evidence in the present habeas record) filed with the Texas Court of Criminal Appeals on November 16, 1979. The defendant objected to Charge 6 insofar as it permitted conviction of Skillern, absent proof of his personal participation in or encouragement of the murder. *Id.* pp. 207, 212.

The pertinent portions of the jury charge at the *guilt* stage of the trial (other instructions were given at the submission to the jury following the post-conviction sentencing hearing) are:

1.

Our law provides that a person commits capital murder when such person intentionally kills or causes the death of another while such person is in the course of committing or attempting to commit the offense of robbery.

2.

A person commits murder when he intentionally or knowingly kills or causes the death of another.

\* \* \* \* \* \*

4.

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

5.

This is a case depending for conviction on circumstantial evidence. In order to warrant a conviction of a crime on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by competent evidence beyond a reasonable doubt, all the facts (that is, the facts necessary to the conclusion) must be consistent with each other and with the main fact sought to be proved, and the circumstances, taken together, must be of a conclusive nature leading, on the whole to a satisfactory conclusion and producing, in effect, a reasonable and moral certainty that the accused, Doyle Edward Skillern, either alone or acting with Charles Victor Sanne, and no other person committed the offense charged.

But in such cases it is not sufficient that the circumstances coincide with, account for, and therefore render probable the guilt of the defendant, Skillern. They must exclude, to a moral certainty, every other reasonable hypothesis raised by the evidence except the defendant, Skillern's guilt, and unless they do so beyond a reasonable doubt, you will find the defendant not guilty.

6.

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. A person is criminally responsible for an offense committed by the conduct of another, if, acting with intent to promote or assist in the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Each such party to the offense, whether jointly indicted or not, may be legally prosecuted and convicted as such, provided the evidence against each establishes that he acted as a party to the offense, regardless of the particular part played by each. Mere presence alone will not constitute one a Party.

If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of and parties to the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

7.

Now therefore if you find from the evidence beyond a reasonable doubt that on or about the 23rd of October, 1974, in the County of Live Oak and the State of Texas that the defendant Doyle Edward Skillern was acting as a party within the meaning of the word "party" as the same is defined in Paragraph 6 of this charge, and that while so acting, if he was, that the defendant, Charles Victor Sanne did then and there intentionally cause the death of Patrick Allen Randel by shooting him with a gun, if he did, and that the said Charles Victor Sanne did then and there intentionally cause the death of the said Patrick Allen Randel, if he did, in the course of committing or attempting to commit robbery as that term has heretofore been defined to you, then you will find defendant, Doyle Edward Skillern guilty of the offense of capital murder as charged in the indictment, and so say by your verdict. You are further instructed that the law of self-defense, as hereinafter defined, does not apply to this paragraph.