**James McNeill BAILEY,
Petitioner-Appellant,**

v.

**Raymond K. PROCUNIER, Director,
Texas Department of Corrections,
Respondent-Appellee.**

No. 83–2420.

United States Court of Appeals,
Fifth Circuit.

Oct. 29, 1984.

Michael J. Whitten, Denton, Tex. (Court-appointed), for petitioner-appellant.

Jim Mattox, Atty. Gen. of Tex., Paula Offenhauser, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before JOHNSON, JOLLY and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

Petitioner James McNeill Bailey is a Texas state prisoner currently serving a life sentence based upon his conviction for the murder of Imogene McNeill Apple. His conviction was affirmed by the Texas Court of Criminal Appeals. *Bailey v. State*, 532 S.W.2d 316 (1975). After exhausting his state remedies, Bailey filed a petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 alleging, *inter alia*, that: (1) the state trial court denied him a fundamentally fair trial by admitting evidence that the murder victim had planned to execute a new will; (2) the state prosecutor withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (3) the state trial court's jury charge violated his right to due process by impermissibly shifting the burden of proof to the accused. Bailey's petition was referred to a United States magistrate who, after conducting an evidentiary hearing, recommended that relief be denied. The federal district court adopted the magistrate's report and dismissed Bailey's petition. We affirm.

## FACTS & PROCEDURAL HISTORY

The facts in this case are reported in detail in the opinion rendered by the Texas Court of Criminal Appeals. *Bailey v. State*, 532 S.W.2d at 318–19. We recite

them here only briefly. In February 1974, Shirley Seiber stopped by the home of her neighbor, Imogene Apple, to drive Apple to an appointment with her attorney. After hearing a "bumping racket" inside, Seiber entered the house through an unlocked door and saw Apple lying face down in a pool of blood on the utility room floor, groaning.

Seiber then went back outside and called out for Bailey, Apple's cousin, whose car Seiber had seen parked "out by the fence in the back" when she arrived. Seiber returned to the den and began to call for an ambulance. As Seiber completed the call, Bailey walked out of the utility room where Apple lay, with blood on his hands and collar. Seiber later testified that while she was in the den no one could have entered the house either through the sliding glass doors in the den or through the outside utility room door, without her seeing them.

Freddie Wilson, Apple's plumber, arrived at the residence while Seiber was telephoning for an ambulance. Seiber admitted Wilson into the house and informed him that Apple lay injured on the utility room floor. Wilson did not see Bailey when he first entered the house, but later observed Bailey kneeling over Apple's body. Wilson later testified that as he gathered his tools from his truck and walked up to Apple's house he saw no one leave or approach the house.

Officers of the Lewisville, Texas, Police Department arrived at the scene. After brief questioning, Bailey was permitted to leave. As the investigation continued, the officers uncovered a metal pipe with blood and flesh adhering to it, Apple's will, and a bloody coat with a pair of rubber gloves in one pocket. Bailey later returned to the scene and stated that he wished to speak to Captain Edge, who was in charge of the investigation. Bailey then admitted that he had not told the officers "the whole or exact truth about everything" and that he "hid the murder weapon, a jacket, and the gloves." Bailey was thereafter placed in custody and charged with his cousin's murder.

At trial, the State theorized that Bailey, a thirty-four year old airline pilot, murdered his cousin in order to further his scheme to build a health spa and country club on the property he would inherit from her. A jury convicted Bailey of murder and assessed his punishment at life imprisonment.

## THE MURDER MOTIVE

Bailey contends that the trial court erred in admitting evidence that Apple planned to execute a new will unfavorable to him without first requiring a showing that Bailey was aware of her intentions. He implies that the State used this information to convince the jury that he had a motive for killing his cousin that afternoon before she had a chance to meet with her lawyer and sign a new will.

On direct appeal, the Texas Court of Criminal Appeals found that where a case is dependent upon circumstantial evidence for its proof, "the rules of evidence will not be so stringently applied so as to exclude evidence which sheds light on the occurrence." *Bailey v. State*, 532 S.W.2d at 319. The court further stated:

> The deceased's plan to alter her will was a link in the chain of proof that [Bailey] murdered her to inherit her property. Although standing alone it might not support a verdict, when viewed in light of the surrounding circumstances, the evidence complained of is relevant and, therefore, admissible.

*Id.* at 319–20 (citation omitted).

In reviewing state evidentiary rulings, this Court is ever mindful that "[w]e do not sit as a super state supreme court to review error under state law." *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir.1983). Further, a state defendant has no constitutional right to an errorless trial. *Banks v. McGougan*, 717 F.2d 186, 190 (5th Cir. 1983). Indeed, this Court will grant federal habeas corpus relief only when the trial judge's error is so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause. *Id.; Skillern*, 720 F.2d at 852. Hence, the erroneous admission of prejudicial evidence justifies

federal habeas corpus relief only when it is "material in the sense of a crucial, critical, highly significant factor." *Skillern*, 720 F.2d at 852. (citations omitted).

■ Our canvass of the record in the instant case reveals but two passing references to Apple's intention to alter her will: her attorney's statement that one purpose of Apple's scheduled appointment on the date of her murder was to "sign a new Will" and the prosecutor's summary of the attorney's testimony at closing argument. State Record Vol. VI at 104–05; State Record Vol. VII at 704–05. Neither Apple's attorney nor any other witness testified that Apple planned to disinherit Bailey. The State's theory, as is exemplified in the prosecutor's opening and closing arguments, was that Bailey killed Apple in order to hasten his inheritance under the existing will, not that he wanted to prevent her from executing a new will disadvantageous to him. *See* State Record Vol. VI at 55–59; State Record Vol. VII at 701–05. Thus, the references to Apple's intention to change her will appear to have been merely tangential to the State's central theory of the case. Clearly, the passing references to Apple's intention to sign a new will were not "material in the sense of a crucial, critical, highly significant factor," *Skillern*, 720 F.2d at 852, and therefore did not violate Bailey's right to due process. *See Johnston v. Pittman*, 731 F.2d 1231, 1235 (5th Cir.1984).

We are also unpersuaded by Bailey's assertion that the district court erroneously relied upon *Nelson v. Estelle*, 642 F.2d 903 (5th Cir.1981), in rejecting his claim for relief on this issue. The district court correctly concluded that under *Nelson*, the admission of the testimony concerning Apple's intention to alter her will "was not so prejudicial as to render the trial as a whole

fundamentally unfair." [1] Record Vol. I at 132.

**BRADY**

■ At Bailey's state habeas corpus proceeding, Joseph Stockard, the son and law partner of Apple's deceased attorney, testified that he had found in his father's files a proposed new will for Apple. The primary change in the redrawn document was to devise to Bailey a life estate in Apple's twenty-one acre property, rather than the unfettered fee interest he would have inherited under the original will. Bailey maintains that this evidence was exculpatory, that the prosecution was aware of it before trial, and that the State violated the strictures of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose the evidence to the defense.

*Brady* dictates that an accused's right to due process is violated when the prosecution withholds material evidence that is favorable to the defense. 373 U.S. at 87, 83 S.Ct. at 1196–97; *Moore v. Illinois*, 408 U.S. 786, 794, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972). In the case *sub judice*, the state court made written findings following the state habeas corpus hearing and concluded that the State neither knew nor should have known of the existence of the proposed new will at the time of trial. This conclusion was based upon the prosecutor's testimony at the state hearing. Bailey offers no evidence to counter the presumption of correctness to which the state court's findings are entitled. 28 U.S.C. § 2254(d); *Sumner v. Mata*, 449 U.S. 539, 546–52, 101 S.Ct. 764, 768–72, 66 L.Ed.2d 722 (1981).

Moreover, the contents of the new will are far from exculpatory. In light of the State's theory that Bailey planned to develop the land into a country club and health

---

1. In *Nelson*, we noted:

This Court has distinguished between two types of "prejudice"; that which might (i) affect the jury verdict, and (ii) which renders the trial as a whole "fundamentally unfair." The erroneous admission of evidence which might affect a jury's verdict is prejudicial enough to constitute reversible error, how-

ever, *within the constitutional framework which restricts this Court's review,* such an error must be of the magnitude which will render the trial as a whole "fundamentally unfair."
642 F.2d at 907 (citation omitted) (emphasis added).

spa, Apple's intention to devise him a mere life estate in the property would have severely hindered his real estate development scheme. Thus, it appears that an earlier discovery of the proposed will stood to benefit the prosecution far more than the defense. Accordingly, Bailey's *Brady* argument is without merit.

## JURY CHARGE

At the close of evidence, the trial court, over defense counsel's objection, charged the jury in part:

> Unless you find from the evidence beyond a reasonable doubt that the death of Imogene McNeill Apple was not caused by the independent act of a third party, if there was such a death, or if you have a reasonable doubt thereof, then you will acquit the Defendant.

State Record Vol. V at 869. Bailey contends that the instruction confused the jury and impermissibly shifted the burden of proof to the accused.

 A federal court may grant habeas corpus relief only when the state court's instruction "by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), not merely when the charge "is undesirable, erroneous, or even 'universally condemned.'" *Id.* at 146, 94 S.Ct. at 400. *See also Plunkett v. Estelle,* 709 F.2d 1004, 1009 (5th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984). Although the instruction of which Bailey complains is not a model of clarity, the charge, when taken as a whole, *see Cupp v. Naughten,* 414 U.S. at 146–47, 94 S.Ct. at 400, did not shift the burden of proof to the defendant. Furthermore, the trial court specifically charged the jury that:

> The burden of proof in all criminal cases rests upon the state throughout the trial; *it never shifts to the defendant.* The defendant is presumed innocent, unless his guilt is established by legal and competent evidence beyond a reasonable doubt; and, in case you have a reasonable doubt as to the defendant's guilt, after considering all the evidence before

you and these instructions, you will acquit him.

State Record Vol. V at 872 (emphasis added). In light of the trial court's unequivocal admonition that the burden of proof rests with the prosecution, the imprecise language of the challenged instruction did not "infect the entire trial" in a manner which violated Bailey's right to due process. *See Cupp v. Naughten,* 414 U.S. at 147, 94 S.Ct. at 400; *Plunkett,* 709 F.2d at 1009.

Accordingly, the judgment of the district court dismissing Bailey's application for a writ of habeas corpus is

AFFIRMED.