**Larry JONES, Petitioner-Appellee Cross-Appellant,**

v.

**Morris THIGPEN, Commissioner, Mississippi Dept. of Corrections, et al., Respondents-Appellants Cross-Appellee.**

No. 83–4085.

United States Court of Appeals, Fifth Circuit.

Sept. 17, 1984.

Rehearing and Rehearing En Banc Denied Nov. 1, 1984.

---

E. Grady Jolly, Circuit Judge, specially concurred with opinion.

Bill Allain, Atty. Gen., William S. Boyd, III, Marvin L. White, Jr., Amy Whitten, Jackson, Miss., for respondents-appellants cross-appellee.

Freeland & Gafford, T.H. Freeland, III, T.H. Freeland, IV, Oxford, Miss., Mary Carolyn Ellis, University, Miss., for petitioner-appellee cross-appellant.

Before REAVLEY, JOHNSON and JOL-LY, Circuit Judges.

REAVLEY, Circuit Judge:

Larry Jones was convicted in Mississippi of capital murder and was sentenced to death. After appealing his conviction and seeking collateral relief in the Mississippi state courts, Jones filed this petition for habeas corpus. The district court denied relief with regard to Jones' conviction but vacated his death sentence on the grounds that he received ineffective assistance of counsel at the sentencing hearing and that the sentence violated *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). The district court authorized the State, if it so chose, to hold a new sentencing hearing at which Jones would again face the possibility of a death sentence. We affirm in major part, but hold that, because the State failed once to produce evidence of Jones' personal culpability sufficient under *Enmund* it is now barred by the Double Jeopardy Clause from trying a second time.

**I**

This is a classic case of felony murder with no eye witnesses. On the morning of December 2, 1974, petitioner Larry Jones and his friend Willie Reddix persuaded Willie's brother J.D. Reddix to drive them to downtown Biloxi in J.D.'s gray Cadillac. Neither Jones nor Willie told J.D. why he needed to go into Biloxi. J.D. drove his brother and Jones downtown and parked the car. J.D. would later testify that Jones was wearing combat boots and that Jones and Willie got out of the car and headed toward Howard Avenue, the general direction of Art's Levis, a clothing store owned by Arthur Weinburger. Lula Mae Bell, the aunt of Willie and J.D., happened to be downtown shopping that day. After first saying she had not seen Jones and Willie downtown, Bell testified that she saw Jones and Willie get out of J.D.'s car. She remembered that Jones wore fatigues and combat boots.

Orvell McGee was doing road work in Biloxi on the morning of December 2 when he noticed two black men get out of a parked Cadillac at about 11:15 and walk toward Howard Avenue. He remembered that one man, the driver, stayed in the car. Preston Sullivan was also downtown that day. He parked his car about a block from Art's along Howard, and as he walked toward the store, Sullivan noticed a black man carrying a Navy P-coat over his shoulder emerge into the street "in the vicinity of" Art's and head east. Sullivan walked past the man and into the store, where he found Arthur Weinburger lying wounded and unconscious. Sullivan summoned help. He would later testify that he found Weinburger between 11:30 and 11:45.

Lula Mae Bell testified that she saw Willie with a coat over his shoulder running east along Howard. Ray Real was on his way back from lunch at about 11:45, according to his testimony, when he saw a black man carrying a footlocker and walking west along Howard. Orvell McGee was still at work when he saw the two men who had left the car return. He recalled at trial that they came from different directions—one wore combat boots, carried a footlocker, and returned from the direction of the Kennedy Marine Building; the other had a leather coat over his shoulder and returned from Howard Avenue. The men had left the car with neither a footlocker nor a coat. Neither McGee, Sullivan, nor Real could identify the men they saw that day.

J.D. testified that he waited about 15 minutes before Jones and Willie returned. He testified that Jones came back by Kennedy Marine and that he was carrying a blue footlocker. Willie returned from the direction of Howard Avenue and carried a jacket. The two got into the car and told J.D. to drive back to the Reddix house. They never told J.D. what happened. Annie Reddix, the mother of Willie and J.D., testified that Jones brought a footlocker

into her house on December 2. He said it was his, and she let him leave it there. She also testified that Jones was wearing combat boots when he arrived at her house, but that he changed into tennis shoes shortly thereafter.

The investigation proceeded quickly after J.D. was arrested wearing some of the clothing stolen from Art's. Police searched Annie Reddix' house the afternoon after the robbery and found the footlocker full of clothes; an employee at Art's later identified both the trunk and its contents as having been stolen from the store. Authorities also found a pair of combat boots; later tests revealed that the boots were stained by human blood, particularly the cloth top of the right boot.

Jones was tried in December 1977.[1] J.D. Reddix testified about his drive to Biloxi with Larry and Willie on December 2, 1974. According to J.D., the two said nothing beforehand about what they planned to do downtown and never told him afterward what had happened while he waited in the car. Orvell McGee and Preston Sullivan testified about what they saw that day, as did Ray Real, but none of these witnesses identified Willie or Larry as the men they saw and none offered any hint about what happened inside Art's store. J.D. testified that Jones wore combat boots that day, and the State introduced the boots found stained with blood in the Reddix home. An Art's employee also identified the footlocker and clothes found at the Reddix house as having been stolen from the store.

Jones was accused of "capital murder," defined in Mississippi to include a killing done "with or without any design to effect death" by a person engaged in a robbery. Miss.Code Ann. § 97–3–19 (Supp.1983). Thus, the trial court apparently delivered a typical felony murder instruction to the jury.[2] Defense counsel had not requested and the trial court did not give any instruc-

tion authorizing the jury to find Jones guilty of a lesser included offense—they were either to find the defendant guilty or not guilty of capital murder. Their verdict was guilty. The court immediately proceeded with the separate sentencing hearing required by Mississippi statute. See Miss.Code Ann. § 99–19–101 (Supp.1983). The State introduced evidence of the victim's age and size, photographs of the victim taken at the hospital, and evidence of Jones' 1975 armed robbery conviction; the defense offered no evidence at the sentencing hearing. Part of the defendant's final argument was delivered by Jones himself, who sought to persuade the jury that the two black men involved in the robbery were Willie and a man named Roy or Royce. The court instructed the jury about the aggravating and mitigating circumstances according to Mississippi's capital punishment statute, and the jury returned its verdict the next morning sentencing Jones to death.

Jones appealed to the Mississippi Supreme Court, arguing among other things that the evidence at trial was insufficient to show that he "was actively engaged in an assault upon the victim in the course of the robbery," and that the trial court violated Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). After reviewing the circumstantial evidence we have already recited, the Mississippi court rejected Jones' claim that the evidence was insufficient to show that he actually assaulted Weinburger. Jones v. State, 381 So.2d 983, 987–89 (Miss.), cert. denied, 449 U.S. 1003, 101 S.Ct. 543, 66 L.Ed.2d 300 (1980). The State need not have shown Jones' "precise role" in the killing, reasoned the court, because Mississippi's definition of capital murder includes a killing "done with or without any design to effect death ...." 381 So.2d at 989 (quoting

---

1. Jones' first trial, in March 1975, ended in a conviction and sentence of death. On direct appeal, the Supreme Court of Mississippi reversed and remanded for a bifurcated proceeding as required by Jackson v. State, 337 So.2d

1242 (Miss.1976). Jones v. State, 342 So.2d 735 (Miss.1977).

2. Inexplicably, the record does not contain the instructions actually given at Jones' trial.

Miss.Code Ann. § 97–3–19(2)(e)).[3] The court then rejected Jones' *Witherspoon* claim, *id.* at 992, and affirmed both his conviction and sentence.

Jones sought collateral review according to state procedure on March 3, 1981, by moving the Mississippi Supreme Court for leave to petition the trial court for a writ, either of error coram nobis or of habeas corpus. *See* Miss.Code Ann. § 99–35–145 (1973). Jones challenged his conviction on several grounds, among them that the facts required the trial court to instruct the jury on "the lesser included offense of simple murder," and that the court's failure to deliver such an instruction violated *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). He also argued that his death sentence constituted cruel and unusual punishment for several reasons, including the fact that he was convicted under Mississippi's capital murder statute with no finding that he killed or intended to kill Arthur Weinburger.[4] The State responded to most of Jones' arguments on their merits. The single relevant exception was its answer to the *Beck* claim, in which the State noted that Jones had not requested an instruction on lesser included offenses at trial and had never presented the *Beck* argument at any stage in the state proceedings. The Mississippi Supreme Court denied the motion with no explanation on April 1, 1981:

This cause this day came onto be heard on motion for leave to file petition for writ of error coram nobis and/or for a writ of habeas corpus and this Court having sufficiently examined and considered the same and being of the opinion that the same should be denied doth order that said motion be and the same is hereby denied.

Jones had filed this petition for federal habeas on March 9, 1981, shortly after moving for collateral relief in the Mississippi Supreme Court. To the extent they remain on appeal, Jones' arguments in support of federal habeas relief were that his conviction violated due process under *Beck* because of the trial court's failure to instruct on a lesser included offense; that the jury was selected in violation of *Witherspoon;* that he received ineffective assistance of counsel at the sentencing hearing; and that his sentence to death with neither finding nor proof that he killed or intended to kill constituted cruel and unusual punishment. The State's response concerning the exhaustion requirement was ambiguous. Noting first that Jones had raised "certain grounds" in his federal petition that had not first been presented to the state courts, the State explicitly waived the exhaustion requirement in the interest of obtaining "expeditious consideration." In the same paragraph, however, the State expressed its intention to rely on the argument that "[t]here are independent and adequate state procedural grounds which prevent review here of certain issues which could have [been] but were not raised in the State Court system."

After two hearings, the district court issued its opinion and order granting relief with regard to Jones' sentence. 555 F.Supp. 870 (S.D.Miss.1983). The court considered state remedies to be exhausted with regard to all grounds asserted by Jones: they were all presented on motion for collateral relief to the Mississippi Supreme Court, which was presumed to have reached the merits in the absence of its expressed reliance on a state procedural default committed by Jones. The district court then rejected Jones' *Witherspoon* and *Beck* claims on their merits. It set

3. The court noted, however, that Jones had not argued "that the legislature lacks the power to expose him to guilt of capital murder in the absence of proof that he had specific intention to kill." *Id.* at 989.

4. Jones also reargued his *Witherspoon* claim, contended that he had not had sufficient time to prepare for the sentencing hearing, and re-

peated his argument that he could not be convicted of capital murder under Mississippi law merely because he participated in the robbery. In this last connection, he asserted that state law required proof that he, not an accomplice, "committed or participated in the commission of the murder."

aside the death sentence for two alternative reasons, however. First, the sentence constituted cruel and unusual punishment under *Enmund* for lack of a finding by the jury that Jones killed, attempted to kill, or intended to kill. Second, Jones received ineffective assistance of counsel at the sentencing hearing because his attorney failed to present evidence that Jones was mildly mentally retarded. The court authorized the State to hold a new sentencing hearing, expressly rejecting Jones' argument that such a hearing would violate the Double Jeopardy Clause.

## II

*Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), construed the Eighth Amendment to forbid imposition of the death penalty against "one who neither took life, attempted to take life, nor intended to take life." *Id.* at 786, 102 S.Ct. at 3371. Jones' major claim, therefore, is that his death sentence must be set aside because there was neither a finding nor sufficient evidence to support a finding that Jones killed or intended to kill Arthur Weinburger in the course of robbing his store.[5] The district court agreed that the jury instructions in both the guilt and sentencing phases of Jones' trial failed to require a finding that Jones killed or intended to kill. Its opinion includes a footnote, however, stating that the record contains "evidence ... from which a jury could determine the petitioner's individual culpability." The court therefore vacated Jones' death sentence, but extended the State an opportunity to resentence Jones to death after a new hearing and upon a finding consistent with *Enmund*.

### A

The State argues first that *Enmund* ought not be retroactively applied. It argues uphill, for we recently applied *Enmund* to vacate the death sentence imposed on Jones' accomplice, Willie Reddix, only days before Jones was tried. *Reddix v. Thigpen*, 728 F.2d 705 (5th Cir.1984); *see also Skillern v. Estelle*, 720 F.2d 839 (5th Cir.1983); *Bell v. Watkins*, 692 F.2d 999 (5th Cir.1982) (like *Skillern*, applying *Enmund* retroactively and denying relief on that ground), *cert. denied*, —— U.S. ——, 104 S.Ct. 142, 78 L.Ed.2d 134 (1983). But because the State did not argue in *Reddix* that *Enmund* should apply only prospectively, we pause to consider the issue.

Judicial decisions ordinarily apply retroactively. *See Robinson v. Neil*, 409 U.S. 505, 507–08, 93 S.Ct. 876, 877–78, 35 L.Ed.2d 29 (1973). "Indeed, a legal system based on precedent has a built-in presumption of retroactivity." *Solem v. Stumes*, —— U.S. ——, ——, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984). In 1965, however, the Supreme Court began to shape a retroactivity analysis to be applied when it announced rules of a procedural character. *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *see Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). But cases articulating certain fundamental guarantees do not lend themselves to the retroactivity analysis established in *Linkletter* and systematized in *Desist*. *See Robinson*, 409 U.S. at 508, 93 S.Ct. at 878. Among those guarantees that have been excluded from normal *Linkletter* analysis are the Eighth Amendment prohibition against capital punishment announced in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), *see, e.g., Stewart v. Massachusetts*, 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972) (per curiam), and the Fifth Amendment's prohibition against double jeopardy. *See, e.g., Robinson*, 409 U.S. at 510–11, 93 S.Ct. at 879.

---

5. This claim is properly before us, for the State has waived the exhaustion requirement and asserts no procedural default with respect to the *Enmund* claim that might bar federal review. *See McGee v. Estelle*, 722 F.2d 1206 (5th Cir. 1984) (en banc). Despite its waiver of the exhaustion requirement, the State cryptically urges that we certify to the Mississippi Supreme Court the question "whether as a matter of State law the petitioner intended that a killing would take place." The question of intent is one of fact and evidence, not law. We therefore decline the State's invitation.

■ A decision establishing that certain conduct cannot constitutionally be punished involves just the sort of fundamental guarantee that is not susceptible to solely prospective application. *See United States v. United States Coin and Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). Indeed, the Supreme Court immediately applied retroactively its holding in *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), that the Eighth Amendment forbade execution of a defendant convicted of raping an adult woman. *See Eberheart v. Georgia,* 433 U.S. 917, 97 S.Ct. 2994, 53 L.Ed.2d 1104 (1977); *Hooks v. Georgia,* 433 U.S. 917, 97 S.Ct. 2994, 53 L.Ed.2d 1104 (1977). *Coker* was the last time before *Enmund* that the Court had prohibited capital punishment for a certain species of criminal conduct, and it provided the Eighth Amendment analysis followed five years later by the *Enmund* Court.

*Enmund* absolutely forbids a form of punishment, death, when the accused is not shown and found to have killed or attempted to kill or intended to kill. We cannot imagine applying such a holding only prospectively and, simply because Jones' trial predated the *Enmund* decision, allowing Jones' execution to proceed in the face of *Enmund's* holding that it would constitute cruel and unusual punishment. The State does actually argue that *Enmund's* holding is merely procedural and should therefore be applied only prospectively. The patent frivolousness of such an argument is nicely focused by Jones' statement of the issue: "Should *Enmund* be applied retroactively, or should the state be permitted one last cruel and unusual punishment before *Enmund* takes effect?"

■ The only other imaginable application of *Enmund* short of full retroactivity is to extend back in time its requirement of a finding that the accused killed or intended to kill, but to apply only prospectively

its requirement of sufficient evidence to support that finding.[6] First, such an application dishonors *Enmund* by divorcing its fundamental requirement of a jury finding from the logically inextricable requirement that such a finding be supported by sufficient evidence in the record. Jury findings both by their nature and as a matter of due process require sufficient evidence to support them. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We have at least implied that *Enmund* includes a sufficiency-of-the-evidence component, *see Reddix,* 728 F.2d at 710; *Skillern,* 720 F.2d at 843–49, and our careful review of the Court's opinion confirms that view. We find no basis in *Enmund* to detach a jury finding from the evidence or lack of evidence to support it.

Even the considerations underlying *Linkletter* and *Desist* suggest that *Enmund* be applied retroactively with its full force. The State's major concern is that law enforcement authorities may have relied on the state of the law before *Enmund* came down in 1982. It argues that the only signposts on the way to *Enmund* were the cases concerning nonstatutory mitigating factors that focused on the "concept of individualized sentencing." *Lockett v. Ohio,* 438 U.S. 586, 602, 98 S.Ct. 2954, 2963, 57 L.Ed.2d 973 (1978); *see also Washington v. Watkins,* 655 F.2d 1346, 1367–77 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982). *Enmund* was neither a "clear break from the past," *Desist,* 394 U.S. at 248, 89 S.Ct. at 1033, nor "distinctly foreshadowed" by earlier cases. *Brown v. Louisiana,* 447 U.S. 323, 336, 100 S.Ct. 2214, 2224, 65 L.Ed.2d 159 (1980) (plurality). It followed the analysis in *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), a decision announced only six months before Jones' trial, but was by no means the necessary consequence of *Coker's* holding. Never-

---

6. Such an application is suggested by the fact that the State urges its retroactivity argument here, in apparent anticipation of our holding that the evidence of intent to kill was insufficient, but not in *Reddix,* where the evidence of intent was predictably held adequate. In *Jones,*

retroactive application of *Enmund* bars the State from ever imposing the death penalty, *see* section III(c), *infra* (double jeopardy analysis); in *Reddix* it worked no such result. *See Reddix,* 728 F.2d at 710–11.

theless, *Coker* offered thoughtful prosecutors the jurisprudential tool with which they might at least have anticipated the problem resolved in *Enmund.*

More reasurring is the simple impulse of law enforcement authorities to collect and present whatever relevant evidence is available. Nothing before *Enmund* gave one prosecuting a felony murder case any reason to hesitate about offering available proof that a particular defendant either killed or harbored an intent to kill. We are confident that had such admissible evidence been available, the State would have presented it, either at Jones' trial or during the sentencing hearing.

Finally, our fully retroactive application of *Enmund* works no seriously disruptive effect on the administration of justice. The State wildly exaggerates by suggesting that our decision will affect all death row inmates in each of the seven states that imposed capital punishment for felony murder at the time *Enmund* was decided. Even if that prospect troubled us, we believe the prediction unjustified. The *Enmund* Court itself noted that its holding touched only a handful of death row inmates. 458 U.S. at 791–97, 102 S.Ct. at 3375–76. We know of no other case in which an *Enmund* claim has succeeded on grounds of insufficient evidence, and we are led to believe that most of the few death sentences based on felony murder convictions are supported by *Enmund* evidence sufficient under the *Jackson* standard. The double jeopardy bar will be infrequent indeed.

■ In light of Jones' sufficiency argument and of our obligation to reach claims that may bear double jeopardy significance, see *French v. Estelle,* 692 F.2d 1021 (5th Cir.1982), *modified on other grounds,* 696 F.2d 318 (5th Cir.), *cert. denied,* 461 U.S.

937, 103 S.Ct. 2108, 77 L.Ed.2d 313 (1983), we can find no basis consistent with the purposes behind *Enmund* and the policies served by the Double Jeopardy Clause to dissect the *Enmund* rationale to avoid a double jeopardy bar.

### B

■ *Enmund* requires that before a state may impose the uniquely severe and irrevocable sentence of death it must "focus on the personal intent and culpability of the defendant himself, and not merely that of an accomplice." *Reddix,* 728 F.2d at 708. To that end, the Court established an Eighth Amendment principle that exists at two levels: first, an accused may not constitutionally receive the death penalty except upon a finding that he himself killed, attempted to kill, or intended to kill; and second, he may not be sentenced to death unless that finding is supported by sufficient evidence in the record. *See Skillern,* 720 F.2d at 843–49.

Jones contends that the evidence was insufficient to support any possible finding that he participated in killing Arthur Weinburger or that he intended the killing to take place. We are therefore to determine whether the evidence was such that a properly instructed, rational jury could have found beyond a reasonable doubt that Jones killed or intended to kill.[7] *Skillern,* 720 F.2d at 844; *see Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979).

The State rests its position that the evidence was sufficient on only two grounds:[8] first, the mass of circumstantial evidence quite compellingly shows that Jones participated in the robbery of Art's Levis; and second, the blood found on Jones' combat boots—particularly on the top of one boot—allows a fair inference that Jones

---

7. The claim is before us, for it was raised below and rejected by the district court. 555 F.Supp. at 879 n. 8.

8. The State would also distinguish *Enmund* on its facts. Enmund drove a get-away car and was outside the house as his accomplices killed the Kerkseys within, argues the State; Jones

was at least physically present at the scene of the killing. The distinction is without a difference, however, for like Enmund, Jones himself has not been shown to have killed or intended to kill. His presence at the scene supports no such inference.

was present when Weinburger was killed.[9] Our question after *Enmund* is whether the evidence was sufficient to show that Jones himself actually killed or intended to kill. After searching the record, we conclude it was not.

The record is more than sufficient to show that Jones and Willie Reddix robbed Art's Levis, that its owner was killed in the course of that robbery, and that Jones was present when the killing occurred. But the evidence concerning events before and after the robbery offers no indication which robber killed Weinburger, *cf. Ross v. Hopper*, 716 F.2d 1528, 1533 (11th Cir.1983) (evidence sufficient to show that accused actually killed victim), *reh'g en banc granted*, 729 F.2d 1293 (11th Cir.1984), or that either man intended in advance that the killing would take place. *Cf. Skillern*, 720 F.2d at 844 (evidence sufficient to show accused agreed with accomplice before robbery that victim would be killed); *Stanley v. Zant*, 697 F.2d 955, 972–73 (11th Cir.) (same), *rev'd on other grounds*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). The nature of the murder itself supports no inference that both Jones and Willie played a part, and we find no evidence about possession or ownership of the murder weapon. The only direct evidence of what happened inside the store was the presence of blood stains on the top of Jones' combat boots. Circumstantial evidence places Jones in the store with Willie Reddix at the time Weinburger was killed and the blood stains may place him near the victim, but we find absolutely nothing to show that he actually killed or even intended any physical harm to Weinburger. *See Turner v. McKaskle*, 721 F.2d 999, 1002 (5th Cir. 1983).[10]

This result may at first seem inconsistent with *Reddix*, in which we found evidence sufficient for a reasonable jury to have concluded that Willie Reddix "had a personal criminal intent justifying the imposition of the death penalty." 728 F.2d at 710. But *Reddix* differs from this case in one crucial respect: Reddix confessed; Jones did not. Reddix stated in his confession that he participated in Weinburger's killing by diverting the victim's attention while Jones hit him from behind. *Id.* at 711 n. 6. That confession is obviously not a part of our record, and Willie Reddix did not testify against Jones.

Jones also contends that *Enmund*'s other prong was violated because the jury was never required to make a finding whether Jones killed or intended to kill. The State apparently does not argue that the instructions given in this case required a jury finding consistent with *Enmund*. Although the instructions given at the guilt phase of Jones' 1977 trial are not in the record,[11] the State does not argue that they differed materially from Mississippi's statutory definition of capital murder, which does not require proof that the accused killed or intended to kill. *See* Miss.Code Ann. § 97–3–19 (Supp.1983).[12] We do have

9. The State also relies on the fact that Jones returned to J.D.'s car with some of the items stolen from Art's.

10. *See also Clark v. Maggio*, 737 F.2d 471 (5th Cir.1984). Clark participated in the 1975 robbery of a motel in the course of which a night bookkeeper was killed. He was indicted, convicted, and sentenced to death under Louisiana's first degree murder statute, which required proof that Clark intended to kill or inflict great bodily harm. The Louisiana Supreme Court vacated his death sentence and remanded for resentencing to life imprisonment. We held that mere participation in a robbery is insufficient under *Jackson* to support a finding of intent on the part of one robber in connection with a murder committed by another. *Id.*, at 474 (citing *Clark v. Louisiana State Penitentiary*, 694 F.2d 75, 78 (5th Cir.1982)). We found no prejudice to Clark, however, because he ultimately received the same sentence as would have been available under Louisiana's second-degree felony murder statute, which required no proof of intent.

11. The record does contain the instructions given at Jones' first trial in 1975. Those instructions unmistakably allowed the jury to convict without proof that Jones killed Weinburger or that he intended that the killing take place.

12. Mississippi has since amended its death penalty statute to require an *Enmund* finding:

In order to return and impose a sentence of death the jury must make a written finding of one or more of the following:

an instruction given at the sentencing hearing, but nowhere did it require the jury to find that Jones killed or intended to kill before imposing the death penalty. *Cf. Skillern v. Estelle*, 720 F.2d 839 (5th Cir. 1983) (instruction at sentencing phase cured *Enmund* flaw). We therefore agree with the district court that the jury instructions in this case were insufficient to support a death sentence.

Jones' death sentence constitutes cruel and unusual punishment under *Enmund* because the State offered insufficient evidence that Jones killed or intended to kill Weinburger and because the jury instructions did not require a finding consistent with *Enmund* before the death penalty was imposed.[13] We now consider whether the State may again expose Jones to a possible death sentence.

## C

Jones argues that the Double Jeopardy Clause prevents the State from subjecting him again to a sentencing hearing at which he would face a possible death sentence. The district court anticipated *Skillern* in its view that an *Enmund* violation ordinarily may be cured by a new sentencing hearing with a jury properly

> (a) The defendant actually killed;
> (b) The defendant attempted to kill;
> (c) The defendant intended that a killing take place;
> (d) The defendant contemplated that lethal force would be employed.

Miss.Code Ann. § 99–19–101(7) (Supp.1983).

**13.** *Enmund* does not require that we disturb Jones' conviction. The "capital murder" statute under which he was convicted defines the offense usually termed felony murder as a killing done "with or without any design to effect death" by anyone engaged in the commission of certain crimes, one of which is robbery. Miss. Code Ann. § 97–3–19 (Supp.1983). We have already noted that the capital murder statute "does not *require* imposition of capital punishment, and the Eighth Amendment, as interpreted by *Enmund*, is not implicated as long as the sentence imposed is not capital punishment." *Reddix*, 728 F.2d at 708 (footnote omitted; emphasis in original); *see Skillern*, 720 F.2d at 846–47. *Cf. Clark v. Maggio*, 737 F.2d 471 (5th Cir.1984) (considering effect of prosecution's failure to prove intent under Louisiana's first degree felony murder statute, which required such proof).

instructed according to *Enmund* that death may be imposed only on a finding that the accused killed, attempted to kill, or intended to kill. Jones contends, however, that *Enmund*'s is a rule of evidentiary sufficiency, and that because the State failed to produce sufficient evidence of personal culpability at the first trial it is barred by the Double Jeopardy Clause from a second chance. We agree with Jones and therefore reverse the district court's judgment to the extent that it allows the State again to place Jones in jeopardy.

We focus on the relationship of two watershed Supreme Court decisions. First, *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), held that one accused of a capital crime but sentenced by a jury to life after a bifurcated proceeding similar to Mississippi's may not on retrial again be placed in jeopardy of receiving the death penalty. After *Bullington*, a capital sentencing proceeding like Mississippi's is regarded as a second "trial" at which the prosecution must again "prove its case" if it is to obtain a death sentence. *See Arizona v. Rumsey*, —— U.S. ——, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984).[14] Sec-

**14.** Mississippi does not seek to distinguish its bifurcated sentencing proceeding from that of Missouri analyzed in *Bullington;* the two are similar in all relevant respects. That fact, together with the Supreme Court's recent decision in *Rumsey,* leads us to distinguish *Knapp v. Cardwell,* 667 F.2d 1253, 1264–65 (9th Cir.) (relying in part on fact that sentencer was judge, not jury; *Rumsey* later rejected the distinction), *cert. denied,* 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982). *Knapp* merely held that *Bullington* does not raise a double jeopardy bar at a second sentencing hearing as to each aggravating circumstance found not to exist at the first sentencing hearing. Aggravating circumstances are applied together and in the disjunctive to justify imposition of a death sentence. *Enmund*'s requirement is absolute—no defendant may be sentenced to die but upon proof he killed, intended to kill, or attempted to kill; the prosecutor's failure to produce sufficient evidence to support such a finding at the first sentencing cannot, consistently with the Double Jeopardy Clause, be given a second chance.

ond, *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), established an exception to the usual rule that a convicted defendant who prevails in his appeal is subject to retrial. *See Tibbs v. Florida*, 457 U.S. 31, 39, 102 S.Ct. 2211, 2217, 72 L.Ed.2d 652 (1982). *Burks* construed the Double Jeopardy Clause to preclude retrial if the reviewing court found the evidence legally insufficient to support a conviction.[15] *See Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) (applying *Burks* to the states). *Burks* interacts with *Bullington:* if the jury under *Bullington* or an appellate court under *Burks* finds the prosecution's evidence in support of the death penalty insufficient, the defendant cannot again be made to face a possible death sentence.[16] Our interpretation of the Double Jeopardy Clause is limited in major part by the considerations that underlie the retroactive application of intervening authority. Were *Enmund*'s holding and its constitutional basis such that it might apply only prospectively, no Double Jeopardy bar would arise. But as we have already discussed, *Enmund*'s rationale requires retroactive application. It follows necessarily from that conclusion and from *Burks* and *Bullington* that the Double Jeopardy Clause now forbids the State from placing Jones again at risk of receiving a death sentence.[17]

## III

Jones challenges his capital murder conviction in only one argument remaining on appeal. He contends that he was denied due process under *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), by the trial court's failure to instruct the jury that they might convict him of the lesser included offense of simple murder. The argument is without merit for several reasons.[18]

*Beck* held that the death penalty could not be imposed because the trial court had eliminated from the jury's consideration a

**15.** The Supreme Court's recent *Justices of Boston Municipal Court v. Lydon*, —— U.S. ——, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984), does not affect *Burks'* recognition that retrial is barred upon a reviewing court's determination that the evidence at the first trial was legally insufficient. *Lydon* recast *Burks'* holding in terms of continuing jeopardy, but held only that initial jeopardy does not terminate without some event—either an acquittal or a judicial determination of evidentiary insufficiency. —— U.S. at ——, 104 S.Ct. at 1813–14. Bound to reach Jones' claim of insufficient evidence, *French*, 692 F.2d at 1024, we uphold that claim; this decision therefore terminates Jones' initial *Bullington* jeopardy.

**16.** The State argues that *Tapp v. Lucas*, 658 F.2d 383 (5th Cir.1981), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2233, 72 L.Ed.2d 845 (1982), somehow requires a different result. The Mississippi Supreme Court had reversed Tapp's conviction on the ground that his wife should not have been forced to testify; in its opinion, that court noted that without the wife's testimony "the record on the first trial ... would not sustain a conviction." *Tapp v. State*, 347 So.2d 974, 977 (Miss. 1977). We rejected Tapp's double jeopardy challenge after his second trial: "Because the Mississippi Supreme Court made clear that Tapp's first conviction was reversed for trial error, ... Tapp's second trial was not precluded by the double jeopardy clause." 658 F.2d at 385. *Tapp* has no bearing here, for we have

concluded that the evidence supporting Jones' death sentence was indeed insufficient.

**17.** Having concluded that Jones' death sentence violates *Enmund*, we need not reach petitioner's claim that he was denied effective assistance of counsel at the 1977 sentencing hearing. We also do not reach his claim that the trial court's exclusion of certain jurors violated *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), for such a claim draws into question only a death sentence and has no bearing on the underlying conviction. *Id.* at 522 n. 21, 88 S.Ct. at 1777 n. 21; *see Alderman v. Austin*, 695 F.2d 124, 126 (5th Cir.1983) (Unit B) (en banc).

**18.** The State vigorously maintains that our review of this claim is barred because Jones' defense attorney neither requested a lesser-included-offense instruction at trial nor complained of its omission on direct appeal. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Our consideration of that argument is complicated by the Mississippi Supreme Court's failure to explain its denial of Jones' motion for collateral relief, in which this due process claim was unambiguously raised. While we are inclined to agree with the State, *see O'Bryan v. Estelle*, 714 F.2d 365 (5th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984), the contention is not jurisdictional and we choose to reject Jones' claim on its merits.

non-capital "third option" by failing to instruct on a lesser-included offense. Under Alabama law, an intentional killing committed in the course of a robbery is a capital offense; intent to kill cannot be supplied by the felony-murder doctrine, however, and a killing during a robbery without that independent element of intent does not expose the accused to a death sentence. Nevertheless, the statute prohibited the judge from instructing on non-capital felony murder when the defendant was charged with intentional, or capital, murder. The jury was given the choice of either convicting the defendant of capital crime, in which case it was required to impose the death penalty, or of acquitting him. *Id.* at 628–29, 100 S.Ct. at 2385. This, the Supreme Court held, denied the jury a middle ground and thereby introduced too great an element of chance in capital cases.

*Beck* is not implicated in this case. We noted in *Bell v. Watkins,* 692 F.2d 999 (5th Cir.1982), that Mississippi law offers nothing to parallel Alabama's lesser-included felony murder offense: "In Mississippi, *no* murder committed during the course of a robbery can be a simple murder." *Bell,* 692 F.2d at 1004–05 (citing Miss.Code Ann. § 97–3–19(2)(e) (Supp.1982)). *Bell* rejected the death-sentenced petitioner's claim that his Mississippi trial was flawed under *Beck* for lack of instructions on the lesser included offenses of simple murder or manslaughter: because there was no lesser charge available under Mississippi law, *Beck* imposed no due process duty to instruct on a lesser offense. Jones would expand *Beck* to require that Mississippi define an offense that might stand as a "third option" when the state charges capital murder. The Supreme Court has now rejected that construction of *Beck. Spaziano v. Florida,* —— U.S. ——, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), held that *Beck* does not require instruction on a lesser included offense that was barred by a state statute of limitations: "Where no lesser included offense exists, a lesser included offense instruction detracts from, rather than enhances, the rationality of the process. *Beck* does not require that result."

After *Spaziano, Beck* can be read only to require instruction in capital cases on lesser included offenses available under state law. Mississippi defines no lesser included offense that might have applied to this robbery-killing, *Bell,* 692 F.2d at 1004–05, and the trial court in this case was therefore not bound by *Beck* to deliver a lesser included offense instruction.

## IV

Jones was proven and found to have participated in a robbery during which the owner of the store was killed, but he was neither proven nor found to have done the killing or intended that it take place. *Enmund's* interpretation of the Eighth Amendment requires that we vacate Jones' death sentence, and the Double Jeopardy Clause prevents its reimposition. Jones has shown no constitutional infirmity in his conviction.

We therefore AFFIRM the judgment of the district court insofar as it denies relief as to Jones' conviction and insofar as it vacates Jones' death sentence. We REVERSE that judgment, however, insofar as it authorizes the State of Mississippi to hold another sentencing hearing at which Jones would again face a possible death sentence, and we REMAND with instructions to enter an order authorizing the State to resentence Jones to a penalty less than death.

E. GRADY JOLLY, Circuit Judge, specially concurring:

I agree with the majority that *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 3369, 73 L.Ed.2d 1140 (1982), and the Double Jeopardy Clause require us to grant Jones the relief he requests. I specially concur only to emphasize that our decision rests on the fact that the record before us contains absolutely no evidence that Jones himself "took life, attempted to take life, [or] intended to take life." *Id.* at 787, 102 S.Ct. at 3371.

The record in this case does not tell us what Jones and his accomplices separately or collectively intended to do when they drove to downtown Biloxi in December of 1974. It does not tell us what happened inside Art's Levis Store. It does not specify who supplied or carried the weapon that was used to bludgeon Arthur Weinburger to death, and the weapon itself was not introduced at trial. This record does not tell us whether Jones or his accomplice did the actual killing. The state's case consists only of the testimony of several witnesses who observed Jones and his accomplice entering and departing the store, and the testimony of the witness who discovered Weinburger's body inside the store immediately afterwards. *Enmund* undoubtedly, and unfortunately in this case,[1] requires more.

Had the state introduced any evidence that Jones killed or assisted his accomplice in killing Arthur Weinburger, or that he supplied the murder weapon, or even that he knew his accomplice intended that a killing occur, we would reach a different result in this case. Without such evidence, however, we cannot ascribe the personal culpability to Jones that *Enmund* and the eighth amendment require before the state may sentence him to death.

---

1. Reddix, Jones's accomplice, stated in his confession that "Larry hit the man about three times with a Stilson wrench." *Reddix v. Thigpen,* 728 F.2d 705, 711, n. 6 (5th Cir.1984). The confession, however, was not admissible at Jones's trial. *Enmund,* compels the anomalous result that two can avoid a capital murder conviction where one could not. If Jones had been *alone* in this crime, we could, on the evidence against him in this record, uphold a capital murder conviction. If he had been alone the jury could have reasonably inferred that he took the life of Art Weinburger. From this record we cannot say whether it was he or his accomplice or both, and thus neither may receive the death sentence.